UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| KEITH B. WILLIAMS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 08-1654 (RWR) |
| ROBERT C. TAPELLA, Public Printer, United States Government Printing Office, | ) ) ) ) | |
| Defendant. | ) ) | |

### MEMORANDUM OPINION

Plaintiff brings this employment discrimination action against the Public Printer,[1] United States Government Printing Office, and defendant moves to dismiss or, in the alternative for summary judgment. On the basis of defendant's motion, plaintiff's opposition, and the entire record of this case, defendant's motion to dismiss will be denied, and his summary judgment motion will be granted.

I.  BACKGROUND

Plaintiff was employed as a Police Officer with the Government Printing Office ("GPO"). *See* Def.'s Mem. of P. & A. in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mot."), Troupe Decl. ¶ 2. The physical demands of the position included "extended periods of standing and walking while on post or patrol duty [and] [s]ome traveling between Federal agencies within the Washington Metropolitan area." Troupe Decl., Ex. 1 (September 21, 2004 letter from A.L. Troupe, Chief, Workers' Compensation Branch, GPO), Attach. (Position Description for Agency Position No. 017277) at 5. "On August 25, 2003, [plaintiff] injured his

---

[1] The current Public Printer is substituted as the party defendant under Fed. R. Civ. P. 25(d).

back while on the job . . . and made a claim to the Office of Workers' Compensation Programs ('OWCP') for wage loss for total disability." *Id.* ¶ 2.

The GPO received a medical report from Charles J. Azzam, M.D., a neurologist retained to evaluate plaintiff for purposes of his workers' compensation claim. Troupe Decl., Ex. 1. Dr. Azzam's report indicated that plaintiff had reached his maximum level of improvement, that he could not return to his usual job, and that he could work an eight-hour day with permanent restrictions. Def.'s Reply in Supp. of Mot. to Dismiss or, in the Alternative, for Summ. J., Supplemental Troupe Decl., Ex. 1 (August 26, 2004 Work Capacity Evaluation). Plaintiff could sit or walk for four hours per day and stand for two hours per day, and it was recommended that he take a 15-minute break every two hours. *Id.* In addition, plaintiff was to limit twisting, bending, stooping, squatting, kneeling, climbing, pushing, pulling and lifting activities, and was to limit operating a motor vehicle at work. *Id.* Plaintiff was to avoid pushing, pulling or lifting objects weighing more than 40 pounds. *Id.* On the belief that plaintiff's then-current position as a Police Officer met these limitations, the GPO offered plaintiff a Police Officer position at the Main GPO Building at an annual salary of $46,300, available as of October 11, 2004. Troupe Decl., Ex. 1.

On October 7, 2004, plaintiff refused the Police Officer position on the ground that his doctor, Gary C. Dennis, M.D., deemed him totally disabled and unable to perform the duties of a GPO Police Officer. Troupe Decl. ¶ 4 & Ex. 2 (Position Acceptance Form and Disability Certificate). On October 13, 2004, OWCP rescinded its prior decision that the Police Officer position was suitable for plaintiff because the physical demands set forth in the position description exceeded the limitations Dr. Azzam imposed. *Id.* ¶ 5 & Ex. 3 (October 13, 2004 letter from L. Miller, Claims Examiner, Employment Standards Administration, OWCP, United States Department of Labor). It instructed the GPO to make plaintiff "a job offer . . . in

2

accordance with [his] permanent limitations." *Id.*, Ex. 3. To this end, the GPO offered plaintiff the position of Security Clerk at an annual salary of $33,253 plus 10% night differential. *Id.* ¶ 8 & Ex. 4 (January 10, 2005 letter from A.L. Troupe). With respect to the physical demands of the position, "[t]he work [was] primarily sedentary and the incumbent uses a chair or stands to perform the work." *Id.*, Ex. 4, Attach. (Position Description for Agency Position No. 018740) at 4. A Security Clerk would "be able to move around as needed between a seated or standing position." *Id.*, Ex. 4. The OWCP found the Security Clerk position "suitable in accordance with [plaintiff's] medical limitations provided by Dr. Azzam's report." *Id.*, Ex. 5 (January 11, 2005 letter from L. Miller, OWCP) at 1. The OWCP required him to accept an available position not exceeding his physical limitations, Security Clerk, with the understanding that he would be paid "compensation based on the difference (if any) between the pay of the [Security Clerk] position" and that of the Police Officer position as of the date of his injury. *Id.* The OWCP advised plaintiff that, if he refused an offer of suitable employment or failed to report for work as scheduled, he would not be entitled to any further compensation for wage loss. *Id.* at 1-2.

Plaintiff countered that the Security Clerk position amounted to his return to his prior Police Officer position with a new title, at reduced pay, and on a different shift which would "cause[] stress and will create a family hardship." Troupe Decl., Ex. 6 (February 9, 2005 letter to L. Miller). Noting the inconsistencies between the reports of Drs. Azzam and Dennis, plaintiff "request[ed] a referee examination."[2] *Id.* In addition, plaintiff asserted that the GPO was "not trying to accommodate [his] limitation," but rather was "putting [him] back in the same job [he] performed as a Police Officer and all other Police Officers perform when on light duty." *Id.*

---

[2] "If a conflict exists between the medical opinion of the employee's physician and the medical opinion of either a second opinion physician or an OWCP medical adviser or consultant, OWCP shall appoint a third physician to make an examination []. This is called a referee examination." 20 C.F.R. § 10.321(b).

3

The OWCP "reject[ed] [plaintiff's] challenge based on 'the weight of medical evidence in [his] file,'" *id*. ¶ 11 & Ex. 7 (February 17, 2005 letter from L. Miller, OWCP), and plaintiff accepted the Security Clerk position on March 8, 2005.  *Id.*, Ex. 8 (Position Acceptance Form).

Meanwhile, on February 2, 2005, plaintiff had sought counseling from the GPO's Equal Employment Opportunity office.  Troupe Decl. ¶ 12 .  He alleged discrimination on the bases of race, sex and physical handicap due to his returning to work as a Security Clerk, "caus[ing] him to lose his title as Police Officer, receive less pay, any future pay raise, benefits of a Police Officer and change [of] tour of duty to [the third] shift."  *Id.*, Ex. 9 (EEO Counseling Report – Individual Complaint).  He asked that he "keep his Police Officer status, retain his pay and stay on first shift."  *Id.*

On April 22, 2005, plaintiff filed a formal complaint of discrimination against the GPO on the bases of handicap, race, and sex under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, *see* 42 U.S.C. § 2000e *et seq.*, and Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), as amended, *see* 29 U.S.C. § 791 *et seq*.  Troupe Decl. ¶ 13 & Ex. 10 (Complaint of Discrimination in Federal Government); *see* Compl., Attach. (July 10, 2008 EEOC Decision).  According to plaintiff, the GPO discriminated against him by refusing to accommodate his physical limitations resulting from a back injury sustained on the job.  Troupe Decl., Ex. 10, Attach. (typewritten statement).  He noted that the GPO had accommodated "a Female Police Officer who has been on medical restriction for the last eleven years or more, only worked 4 hours a day up until 2004 and now work[s] 6 hours a day is still allowed to keep her position as a Police Officer, and salary yet her job responsibility is the same." *Id.* at 2.  Further, he asserted that the GPO "has always accommodat[ed] the White Officers, who [weren't] able to peform their full Police Duties, due to their medical condition," yet were not removed from their positions, were not assigned to a different shift, and who were not denied full pay. *Id.* at 3.  In

contrast, the GPO "place[ed] [plaintiff] on a shift he ask[ed] not to be on due to family hardship but made up bogus reasons to keep the [plaintiff] on the shift, while constantly moving the other officer[s] to accommodate their needs." *Id.*

An Administrative Judge ("AJ") dismissed plaintiff's complaint on the ground that it was a collateral attack on the OWCP's decision. *See* Compl., Attach. (July 10, 2008 EEOC Decision) at 1. The GPO affirmed the AJ's decision, and plaintiff appealed to the Equal Employment Opportunity Commission ("EEOC"). *Id.* With respect to plaintiff's disability-related claim, the EEOC concluded that the AJ "incorrectly dismissed [plaintiff's] claim under the theory of collateral estoppel." *Id.* at 2. Although the AJ characterized plaintiff's claim "as a collateral attack on the decision made by the [OWCP], *id.* at 1, plaintiff actually "only request[ed] that the [GPO] provide him a reasonable accommodation in light of his medical condition," *id.* at 2. However, because the GPO is not subject to the Rehabilitation Act, the EEOC had "no jurisdiction over [plaintiff's] reasonable accommodation claim." *Id*.

With respect to plaintiff's claims of race and sex discrimination, the EEOC concluded that plaintiff failed to make out a *prima facie* case of discrimination. Compl., Attach. at 2-3. Plaintiff had a permanent disabling condition unlike the temporary conditions "the other individuals outside his protected classes who received accommodation had." *Id.* at 3. Furthermore, he presented no evidence "showing that he was treated differently from similarly situated individuals outside of his protected classes." *Id.* The EEOC concluded that the GPO did not violate Title VII. *Id.*

## II.  DISCUSSION

### A.  *Summary Judgment Standard*

Summary judgment is granted to the movant if it has shown, when the facts are viewed in the light most favorable to the non-movant, that there are no genuine issues of material fact in

dispute and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56(c). A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996). "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249-50 (internal citations omitted). "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996). The adverse party must do more than simply "show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original). Importantly, "[w]hile summary judgment must be approached with special caution in discrimination cases, a plaintiff is not relieved of [his] obligation to support [his] allegations by affidavits or other competent evidence showing that there is a genuine issue for trial." *Morgan v. Fed. Home Loan Mortgage*

6

*Corp.*, 172 F. Supp. 2d 98, 104 (D.D.C. 2001) (citation omitted), *aff'd*, 328 F.3d 647 (D.C. Cir.), *cert. denied*, 540 U.S. 881 (2003).

### B.  Plaintiff Does Not Collaterally Attack the OWCP Decision

The Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101 *et seq.*, provides that the decision of the Secretary of Labor or her designee "in allowing or denying a payment" of federal workers' compensation benefits is "(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."  5 U.S.C. § 8128(b).  The GPO characterizes plaintiff's claims as a challenge to its compliance with OWCP's directive to offer plaintiff a position in accordance with his physical limitations.  Def.'s Mot. at 9.  According to the GPO, the complaint must be dismissed because it makes "an impermissible collateral attack on OWCP's decision making authority" under the FECA.  *See id.* at 9-11.

The Court construes the allegations of plaintiff's *pro se* complaint liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).  Plaintiff does not dispute that his injury "disqualifie[s] [him from] perform[ing] the full function of [the Police Officer] position without some limitation."  Compl. at 1.  Rather, he alleges that he sought and the GPO refused to accommodate his limitations by offering him light duty work as a Police Officer or otherwise by modifying the Police Officer position to meet his needs.  *See id.*; *see also* Pl.'s Opp'n to Def.'s Mot. to Dismiss, [or] in the Alternative, for Summ. J. ("Pl.'s Opp'n") at 1-2 (page numbers designated by the Court).  Insofar as plaintiff's claims center on the GPO's alleged refusal to accommodate his physical limitations, the claims have no effect on the Secretary of Labor's determination of factual and legal issues pertaining to plaintiff's FECA claim or eligibility for worker's compensation benefits.  The FECA does not bar plaintiff's discrimination claims.  *See Miller v. Bolger*, 802 F.2d 660, 666 (3d Cir. 1986) ("We reject the Postmaster General's argument that

allowing [plaintiff] to pursue Title VII remedies will usurp the Secretary of Labor's power under 5 U.S.C. § 8128(b) to make final and unreviewable determinations of FECA benefits."); *DeFord v. Sec'y of Labor*, 700 F.2d 281, 290 (6th Cir. 1983) ("Neither the language of the statute itself nor the policy foundations underlying workmen's compensation acts support a conclusion that intentional discrimination is to be viewed as causing an 'injury' subject to FECA coverage."); *Morris v. Roche*, 182 F. Supp. 2d 1260, 1273-74 (W.D. Ga. 2002) (citing cases) ("The greater weight of authority, however, holds that recovery of FECA benefits does not bar a subsequent claim for discrimination."); *Johnson v. Sullivan*, 764 F. Supp. 1053, 1063 (D. Md. 1991) ("This Court is aware of no law that precludes a FECA beneficiary from recovering for discrimination under Title VII or the Rehabilitation Act."); *see also Meester v. Runyan*, 149 F.3d 855, 857 (8th Cir. 1998), *cert. denied sub nom. Meester v. Henderson*, 526 U.S. 1144 (1999) (recognizing that, although "a frustrated FECA claimant cannot secure judicial review of a FECA compensation decision by claiming that the Rehabilitation Act entitles her to accommodation in performing an alternative position approved by the Department of Labor when the claim is predicated upon the same illness or injury that gave rise to the Department of Labor's initial decision," FECA does not bar all discrimination claims).

The FECA does not bar plaintiff's discrimination claims. However, to the extent that plaintiff brings this accommodation claim under the Rehabilitation Act, it must fail. "It is undisputed that the Rehabilitation Act, by its own terms, does not apply to the GPO," and its employees have no rights under the Rehabilitation Act. *Collins v. James*, 171 Fed. Appx. 859 (D.C. Cir. 2005) (per curiam), *cert. denied*, 547 U.S. 1098 (2006).

### C.  Plaintiff Fails to State a Title VII Claim

Generally, it is "an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or  otherwise to discriminate against any individual with

respect to his compensation, terms, conditions, or privileges of employment, because of [his] race, color, religion, [or] sex[.]" 42 U.S.C. § 2000e-2(a)(1). Based on this language, there are "two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of [his] race, color, religion, sex, or national origin." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008); *see Baloch v. Kempthorne*, 550 F. 3d 1191, 1196 (D.C. Cir. 2008) ("Under Title VII . . . and the Rehabilitation Act, the two essential elements of a discrimination claim are that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, . . ., sex, . . . or disability.").

"The D.C. Circuit defines adverse employment action as 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" *Aliotta v. Bair*, 576 F. Supp. 2d 113, 120 (D.D.C. 2008) (quoting *Taylor v. Small*, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). "[C]ourts have consistently focused on ultimate employment decisions such as hiring, granting leave, promoting and compensating" employees in this context, *Dobbs v. Roche*, 329 F. Supp. 2d 33, 42 (D.D.C. 2004), and adverse employment actions do not include "'[p]urely subjective injuries,' such as dissatisfaction with reassignment, public humiliation, or loss of reputation." *Nichols v. Truscott*, 424 F. Supp. 2d 124, 136 (D.D.C. 2006) (quoting *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006)).

    1.  <u>Plaintiff Does Not Establish that He Was Qualified for a Police Officer Position</u>

The familiar burden-shifting analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), requires that plaintiff make out a *prima facie* case of discrimination: (1) he belongs to a protected class, (2) he was qualified for a position for which the employer sought applicants, (3) he was rejected despite his qualifications, and (4) the position remained open and the employer continued to seek applicants with his qualifications. *Id.* at 802. Defendant argues that,

because "[p]laintiff cannot establish that he was qualified for the position he claims to have been denied or that, in light of his own rejection of the job offer," he suffered no adverse employment action. Def.'s Mot. at 12.

More than one year after plaintiff sustained his on-the-job injury, during which he received worker's compensation benefits, the GPO offered plaintiff a Police Officer position, that is, "the same position he held at the time of his injury." Troupe Decl. ¶ 3. Plaintiff refused the position on the ground that he was totally disabled and, therefore, he could not perform the duties of the job. The OWCP concurred, noting "that the physical demands outlined in the Police [Position Description] exceed[ed] the permanent limitations that Dr. Azzam has imposed as of August 26, 2004." Id., Ex. 3.

Plaintiff counters that, even though he held a Security Clerk position, he performed Police Officer duties between March and June 2005. Pl.'s Opp'n at 4. He states that he was "place[d] . . . back in the same department, working along side [his] fellow Officers and assigned to some [of] the same duties as a Police Officer." Id. at 3. Plaintiff also remarks that others referred to him by title, Pfc., suggesting his status as a Police Officer.[3] See id. at 4; see also id., Ex. 7 (March 18, 2005 e-mail from R.C. Monroe), Ex. 9 (March 4, 2005 time and attendance records listing plaintiff as "PFC"). In his view, the GPO "should not be allowed to cite jurisdiction authority mainly using the Department of Labor, for their actions to not be challenge[d] or cited on the appointment of a job offer." Id. at 4. Without citing authority for this proposition, plaintiff asserts that the GPO could have and should have modified the Police Officer position in order to accommodate his physical limitations. Id. at 3.

---

[3] The Court presumes that the title "Pfc." means Policeman First Class. See Def.'s Mot., Troupe Decl., Ex. 1, Attach. at 1. Defendant states that, upon plaintiff's return to work in March 2005, the GPO's paperwork "initially mistakenly referred to [plaintiff] as a Police Officer (his pre-injury position)," an "error [which] was ultimately corrected." Def.'s Reply, Supplemental Troupe Decl. ¶ 4.

10

Plaintiff did not request a modification at the time the GPO offered him a Police Officer position in 2004, however. Rather, he refused to be considered for the Police Officer position because he claimed to be totally disabled. Moreover, assuming that plaintiff had been assigned some Police Officer duties, such assignments do not rebut defendant's showing that he was not physically capable of performing all of a Police Officer's duties. It cannot be said that defendant either refused to offer plaintiff a Police Officer position or that its so-called refusal to hire plaintiff as a Police Officer violates Title VII.

This case presents no circumstances suggesting that the GPO's action was motivated by plaintiff's race, sex, or disability, or that its action resulted in a significant change in plaintiff's employment status. Here, plaintiff finds himself in the lower paid and less physically demanding position of Security Clerk due to his injuries, his own acknowledgment that he cannot perform the physical functions of a Police Officer, and, particularly, the OWCP's determination that plaintiff is able to work under the conditions set forth in Dr. Azzam's report. It is through the worker's compensation proceedings that plaintiff's functional capacity was determined, and the OWCP's findings as to plaintiff's physical limitations and suitability of a particular position remain unchallenged.

Plaintiff has not shown he is qualified for the position of GPO Police Officer and, accordingly, that he has suffered an adverse employment action. *See, e.g., McManus v. Williams*, 519 F. Supp. 2d 1, 6 (D.D.C. 2007) (concluding that plaintiff suffered no adverse employment action where she was not terminated and she was awarded workers' compensation benefits for the time period relevant to the complaint); *Nails v. England*, 311 F. Supp. 2d 116, 122-23 (D.D.C. 2004) (concluding that plaintiff failed to make out a prima facie case of discrimination based on failure to promote where plaintiff was not qualified for the promotion position).

2. <u>Plaintiff Does Not Rebut Defendant's Legitimate, Non-Discriminatory Reason for Its Decision to Rescind the Offer of a Police Officer Position</u>

Defendants argue that, even if plaintiff had made out a prima facie case of discrimination, he fails to show that the GPO discriminated against him on the bases of his race, sex, or disability in violation of Title VII. *See* Def.'s Mot. at 13-14. In determining whether an employer has violated Title VII, the District of Columbia Circuit instructs:

> In a Title VII disparate-treatment suit where an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not – *and should not* – decide whether the plaintiff actually made out a prima facie case under *McDonnell Douglas*. Rather, in considering an employer's motion for summary judgment . . ., the district court must resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, . . . [or] sex[?]"

*Brady v. Office of the Sergeant at Arms*, 520 F.3d at 494 (emphasis in original) (citations omitted).

The GPO asserts its reliance on the OWCP's determination in the worker's compensation matter as to the suitability of a position to plaintiff's partially disabled condition:[4]

> GPO did not make the decision that [plaintiff] could not return to his prior position as a Police Officer. The decision was made by the United States Department of Labor, through OWCP, which makes final decisions on all workers' compensation cases. GPO followed the directives and suitability determinations of OWCP in offering job positions to [plaintiff] following his injury. GPO is required to follow the directives and suitability determinations of OWCP and [the declarant] is not aware of any instance in which GPO has failed to comply with the directives and suitability determinations of the OWCP.

---

[4] A partially disabled employee is one "who cannot return to the position held at the time of injury (or earn equivalent wages) due to the work-related injury, but who is not totally disabled for all gainful employment." 20 C.F.R. § 10.402. "[A] partially disabled employee who refuses to seek suitable work, or refuses to or neglects to work after suitable work is offered to or arranged for him or her, is not entitled to compensation." 20 C.F.R. § 10.517(a).

12

Troupe Decl. ¶ 14. The OWCP determined that plaintiff is "disabled for the job [he] held on the date of the injury," yet he is "capable of working." Supplemental Troupe Decl., Ex 2 (March 24, 2006 letter from L. Miller). Further, it determined that the Security Clerk position "fairly and reasonably represents [his] wage-earning capacity[,]" and in light of plaintiff's "demonstrated . . . ability to perform the duties of this job . . ., this position is considered suitable for [his] partially disabled condition." *Id.*

Plaintiff "is . . . not questioning what the [OWCP] finds suitable or unsuitable," Pl.'s Opp'n at 3, and he does not argue that he is incapable of performing the duties of a Security Clerk. Rather, he asserts that the GPO's reliance on the OWCP is misplaced because the OWCP "never informed the [GPO] [that] the [Police Officer] job offered . . . couldn't be modified to accommodat[e] the Plaintiff[']s] limitations." *Id.* at 2. Plaintiff, then, insists that he is entitled to a modified Police Officer position so that he could maintain his title, pay, benefits and retirement, and work a preferred shift, notwithstanding his physical limitations. *See id.* at 4.

OWCP determinations of law and fact regarding compensation for federal disability status are not reviewable. 5 U.S.C. § 8128(b). As long as the OWCP deemed plaintiff permanently partially disabled, and deemed the Security Clerk position suitable in light of plaintiff's limitations, the GPO cannot be held liable under Title VII because the OWCP rescinded its decision that the Police Officer position was a suitable position for plaintiff. *See Woods v. Runyan*, No. 94-6520, 1995 U.S. App. LEXIS 24630, at *3 (6th Cir. Aug. 17, 1995) ("[B]ecause 5 U.S.C. § 8128(b)(1) makes the OWCP determinations conclusive 'with respect to all questions of law and fact,' and because the OWCP found the job offer made to Woods valid, Woods cannot collaterally attack the validity of the job offer in federal court."), *cert. denied*, 516 U.S. 1060 (1996); *see also Desmond v. Gober*, No. 00-6261, 2006 WL 2096064, at *6-7 (D.N.J. July 27, 2006) (concluding that plaintiff failed to make out a prima facie case under the

Rehabilitation Act because, even with reasonable accommodations, an OWCP-appointed psychiatrist determined plaintiff would be unable not only to perform his pre-injury job as cemetery caretaker but also to perform any occupation).

### III.   CONCLUSION

Plaintiff neither suffered an adverse employment action because of his race, sex or physical disability, nor rebutted the GPO's legitimate non-discriminatory reasons for refusing to hire him as a Police Officer.  Accordingly, the Court grants defendant's motion for summary judgment.  An Order accompanies this Memorandum Opinion.

Signed this 30th day of September, 2009.

/s/
RICHARD W. ROBERTS
United States District Judge
